**Papetti Samuels Weiss McKirgan LLP**
**Bruce Samuels (State Bar No. 015996)**
bsamuels@pswmlaw.com
**Jennifer Lee-Cota (State Bar No. 033190)**
jleecota@pswmlaw.com
**Scottsdale Quarter**
**15169 North Scottsdale Road**
**Suite 205**
**Scottsdale, AZ 85254**
**+1 480 800 3530**

**Wilmer Cutler Pickering Hale and Dorr LLP**
**Seth P. Waxman, (*pro hac vice application forthcoming*)**
seth.waxman@wilmerhale.com
**Daniel Volchok, (*pro hac vice application forthcoming*)**
daniel.volchok@wilmerhale.com
**Christopher E. Babbitt, (*pro hac vice application forthcoming*)**
christopher.babbitt@wilmerhale.com
**Edward Williams (*pro hac vice application forthcoming*)**
ed.williams@wilmerhale.com
**Susan M. Pelletier (*pro hac vice application forthcoming*)**
susan.pelletier@wilmerhale.com
**1875 Pennsylvania Avenue NW**
**Washington, DC 20006**
**+1 202 663 6000**
**+1 202 663 6363**

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Democratic National Committee; Arizona Democratic Party, <br><br> Plaintiffs, <br><br> v. <br><br> Katie Hobbs, *in her official capacity as Arizona Secretary of State*; Mark Brnovich, *in his official capacity as Arizona Attorney General*, <br><br> Defendants. | Case No. <br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF <br><br> JURY TRIAL DEMANDED |

### INTRODUCTION

1.      In *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1 (2013), the Supreme Court struck down Arizona's attempt to restrict voting rights by requiring individuals who registered to vote using the federally approved registration process to submit documentary

proof of U.S. citizenship.  Undaunted, Arizona has enacted another statute that restricts voting rights—one far more restrictive than the law the Supreme Court invalidated.  The new statute, House Bill 2492 ("H.B. 2492"), flagrantly violates both the Constitution and the National Voter Registration Act, 52 U.S.C. §§20501-20511 ("NVRA"), which together prohibit the imposition of arbitrary, unnecessary, and discriminatory requirements on voting.

2.     In particular, H.B. 2492 imposes undue and unequal burdens on certain voters, including by requiring Arizonans to provide documentary proof of citizenship in order to register to vote in all elections (unless election officials can independently verify a voter's citizenship using highly unreliable databases).  It also subjects voters who registered without providing such proof (as federal law allows them to do) to the threat of removal from the rolls as well as investigation and even prosecution.  And the law denies voters who did not provide documentary proof of citizenship, and only these voters, both the right Arizona has long provided to vote by mail and (even more remarkably) the right to vote in presidential elections.  The law even allows election officials to remove registered voters who are suspected of being non-citizens from the rolls (including just before elections take place) without providing them any notice or an opportunity to be heard.

3.     None of this is justified.  Arizona has pointed to no evidence that non-citizens have participated in its elections, let alone evidence that voting by non-citizens in Arizona is so widespread as to justify the severe infringements H.B. 2492 imposes.  Nor has Arizona otherwise justified any of H.B. 2492's discriminatory and procedurally deficient restrictions.

4.     This total failure of justification leaves no doubt that H.B. 2492 violates the First and Fourteenth Amendments, which bar states from adopting procedures that unduly burden the right to vote—including procedures that create an unreasonable risk of erroneous deprivations of voting rights.  In fact, H.B. 2492 is unconstitutional in three ways.  It burdens the fundamental right to vote without adequate justification, in violation of the First and Fourteenth Amendments.  It discriminates against certain voters and prospective voters— including based on race and other demographic characteristics—in violation of the Equal Protection Clause.  And it infringes registered voters' right to cast a ballot without notice

and an opportunity to be heard (or other procedural protections), in violation of the Due Process Clause.

5.    H.B. 2492 likewise violates the NVRA.  That law requires both voting requirements and procedures for removing voters from the voter rolls to be uniform and non-discriminatory.  It also prohibits states from demanding anything more to establish a prospective voter's U.S. citizenship than an attestation under penalty of perjury that he or she meets the U.S. citizenship requirement.  And the NVRA bars states from removing voters from the rolls within 90 days of any federal election.  H.B. 2492 contravenes all three of these provisions.  It treats voters in a non-uniform and discriminatory manner.  It requires those registering to vote to provide more information than the NVRA establishes as the requisite to ensure election integrity.  And it permits state officials to remove voters from the rolls within 90 days of a federal election.

6.    This Court should declare H.B. 2492 unlawful and enjoin its enforcement.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction under 28 U.S.C. §1331, as the action arises under the U.S. Constitution and a federal statute (the NVRA).

8.    This Court has personal jurisdiction over the Arizona Secretary of State and the Arizona Attorney General, as they are each sued in their official capacities as elected officials in Arizona.  Furthermore, each works and resides in Arizona.

9.    Venue in this Court is proper under 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

10.   This Court has the authority to grant declaratory and injunctive relief under 28 U.S.C. §§2201-2202, as well as under 52 U.S.C. §20510(b), as the action is brought to challenge violations of the NVRA.  This Court also has authority to enter a declaratory judgment and provide preliminary and permanent injunctive relief under Federal Rules of Civil Procedure 57 and 65.

**PARTIES**

11.     The Democratic National Committee ("DNC") is the oldest continuing party committee in the United States.  It is an unincorporated association with a principal place of business in Washington, D.C.

12.     The DNC's organizational purposes and functions are to communicate the Democratic Party's position and messages on issues; protect the legal rights of voters; and aid and encourage the election of Democratic candidates at the national, state, and local levels, including by persuading and organizing citizens not only to register to vote as Democrats but also to cast their votes for Democratic candidates.

13.     The DNC is composed of the chair (Jaime Harrison), vice chairs, and over 200 members elected by Democrats in every U.S. state and territory, and the District of Columbia.

14.     The Arizona Democratic Party ("ADP") is a state committee, as that term is defined by 52 U.S.C. §30101.  ADP's purpose is to elect candidates of the Democratic Party to public office throughout Arizona.  To accomplish this purpose, ADP supports Democratic candidates in national, state, and local elections through fundraising and organizing efforts; protects the legal rights of voters; and ensures that all voters can cast ballots in Arizona, including mail ballots.  ADP has members and other constituents across Arizona, including many voters who regularly support and vote for candidates affiliated with the Democratic Party.

15.     There are over 1.3 million registered members of the Democratic Party in Arizona.[1]  It is extremely likely that one or more members of the ADP, or other individuals who would vote for Democrats in Arizona, will be removed from the rolls because of H.B. 2492.  The DNC and ADP can obtain relief on these voters' behalf without their individual participation.  The DNC and ADP thus bring the claims herein on their own behalf as well as on behalf of their members and other individuals who would vote for Democrats in

---

[1] https://azsos.gov/elections/voter-registration-historical-election-data.

Arizona and will be harmed by H.B. 2492's discriminatory treatment of voters and burdens on the right to vote.

16.    H.B. 2492 also directly harms the DNC and ADP as organizations.  The law will require both organizations to expend and divert funds and resources that they would otherwise spend on voter-outreach and mobilization efforts toward informing and educating voters about their rights under the First and Fourteenth Amendments as well as the NVRA, in order to ensure that those voters are not erroneously removed from the voter rolls.  The likely erroneous removal of Democratic voters further injures the DNC and ADP by reducing the number of registered Democrats able to vote in Arizona, thus undermining the two organizations' ability to succeed in having Democrats elected.

17.    Katie Hobbs is Arizona's Secretary of State, the state's chief elections official, responsible for overseeing elections in the state and (under federal law) for coordinating the state's compliance with the NVRA, *see* 52 U.S.C. §20509.  She is sued in her official capacity.

18.    Mark Brnovich is Arizona's Attorney General, the state's chief-law-enforcement official, responsible for overseeing implementing regulations and other compliance with federal and state law—including H.B. 2492.  He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### *The National Voter Registration Act of 1993*

19.    The NVRA was enacted "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," to "protect the integrity of the electoral process," and to "ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. §20501(b)(1), (3)-(4).

20.    Section 5 of the NVRA provides that a state, when registering voters, may "require only [the] minimum amount of information necessary to … enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."  52 U.S.C. §20504(c)(2)(B)(i)-(ii).  The NVRA then

defines what constitutes the "minimum amount of information necessary" to affirm citizenship, by providing that a state "voter registration application … shall include a statement that (i) states each eligibility requirement (including citizenship); (ii) contains an attestation that the applicant meets each such requirement; and (iii) requires the signature of the applicant, under penalty of perjury." *Id*. §20504(c)(2)(C)(i)-(iii).

21.    Section 8 of the NVRA, meanwhile, protects registered voters against wrongful removal from the rolls in two ways relevant here.  It bars states from using programs or systems to maintain voter rolls in any manner that is non-uniform or discriminatory.  52 U.S.C. §§20507(a)(4), (b)(1).  And it proscribes using a voter-list maintenance program to remove voters during the 90 days leading up to any federal election.  *Id.* §20507(c)(2)(A).

*Arizona's Two-Tiered Voter-Registration System*

22.    Arizona has a two-tiered voter-registration system, with some voters allowed to cast ballots only in federal elections and others allowed to do so in federal, state, and local elections.

23.    All voters in Arizona must meet the voter-registration qualifications in the Arizona Constitution and Arizona Revised Statutes §16-101.  Article VII of Arizona's Constitution provides that voters are qualified to vote if they are "a citizen of the United States of the age of eighteen years or over, … have resided in the state for the period of time preceding such election as prescribed by law, provided that qualifications for voters at a general election for the purpose of electing presidential electors shall be as prescribed by law." Ariz. Const. Art. VII, §2, cl. A.  And Arizona Revised Statutes §16-101 provides that the qualifications for voting in Arizona include: (1) being "a citizen of the United States"; (2) being "eighteen years of age or more on … the date of the regular general election next following his registration"; (3) having been "a resident of the state twenty-nine days next preceding the election"; (4) being "able to write his name or make his mark, unless prevented from so doing by physical disability"; (5) not having been "convicted of treason or a felony, unless restored to civil rights"; and (6) not having been "adjudicated an incapacitated person."

24.   For several years, however, Arizona voters who meet those qualifications but do not show proof of U.S. citizenship at the time of registration have been allowed to vote only in federal elections, not state or local elections.[2]

25.   This two-tiered system has its origins in a 2004 ballot initiative (Proposition 200) that required voters to present proof of citizenship when they register to vote, and to present identification in order to vote on election day.  Ariz. Rev. Stat. §16-166(F).  It also required the state's county recorders to reject any application for registration that was not accompanied by proof of citizenship, *id.*—even an application made using the federal form the NVRA requires states to "accept and use," 52 U.S.C. §20505.

26.   The Supreme Court struck down application of the citizenship requirement to Arizonans who register to vote using the NVRA-approved federal form.  *See Inter Tribal Council*, 570 U.S. at 15.  But Arizona continued to enforce the requirement for those who applied to register using any other form.  And it adopted a two-tiered voting system in which those who register using the federal form and do not provide proof of citizenship are forbidden from voting in state and local elections.   Ariz. Rev. Stat. §16-541.   These individuals are known as "federal only" voters.

27.   There are approximately 11,900 Arizona voters allowed to vote only in federal elections—so-called "federal only" voters.  These voters' identities, including demographic information, are in records maintained by the Arizona Secretary of State.[3]

28.   There are accordingly thousands of people lawfully registered to vote in Arizona who have never provided documentary proof of citizenship to the state.   This includes those who registered using the federal form, as well as those who registered prior to 2004, when the state's proof-of-citizenship requirement was adopted.  (Because the state did not require proof of citizenship to obtain a driver's license prior to 1996, voters who

---

[2] https://azsos.gov/elections/voting-election/proof-citizenship-requirements;   *see   also* Arizona Att'y Gen. Op. No. I13-011 (October 7, 2013), https://www.azag.gov/opinions/i13-011-r13-016.

[3] https://www.azmirror.com/blog/few-voters-use-federal-only-ballots/.

used a pre-1996 license to register before 2004 and have not updated their licenses since then do not have documentary proof of citizenship on file with the state.)

29.   A consortium of associations interested in protecting Arizonans' right to vote sued state officials in 2017, resulting in a consent decree that requires state and county officials to check the state's motor-vehicle database to determine if voters who do not provide documentary proof of citizenship with their registration have already provided such proof and thus should be permitted to vote in all elections.  *See* Consent Decree, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (Nov. 7, 2017).

30.   At least 899 Arizona voters who are allowed to vote only in federal elections and who voted in the November 2018 general election are registered Democrats.[4]

31.   Likewise, a significant number of Arizona voters who registered prior to 1996 and have not updated their registration to provide documentary proof of citizenship are registered Democrats.

*H.B. 2492 Imposes Additional Burdens On Voters Who Use The Federal Form Or Who Registered Prior To 2004*

32.   H.B. 2492 amends Arizona law by restricting the voting rights of those who seek to register using the federal form and who (as the federal form allows) do not provide documentary proof of citizenship when registering.  In particular, H.B. 2492 provides that election officials must investigate the citizenship of anyone who submits the federal form without documentary proof of citizenship, and must not only reject any such application if they conclude the applicant is not a citizen, but also refer the applicant to state and county law-enforcement officials for possible prosecution.  *See* H.B. 2492, §4 ("If the county recorder or other officer in charge of elections matches the applicant with information that the applicant is not a United States citizen, the county recorder or other officer in charge of elections shall reject the application, notify the applicant that the application was rejected

---

[4] https://www.azmirror.com/blog/few-voters-use-federal-only-ballots/.

because the applicant is not a United States citizen and forward the application to the county attorney and Attorney General for investigation.").

33.     Moreover, if officials are merely "unable" to verify the citizenship of a person who registers using the federal form and (as federal law allows) does not provide documentary proof of citizenship, the applicant is barred, until such proof is provided, from voting by mail—a right all Arizonans have had by statute for decades—and from voting in presidential elections.  H.B. 2492 §4.

34.     Similarly, H.B. 2492 provides that those who previously registered without documentary proof of citizenship become "not eligible to vote in presidential elections." And those who previously registered to vote and who are "eligible to vote only for federal offices" become ineligible "to receive an early ballot" on December 31, 2022.  *Id.* §5; *see* S.B. 1638 (making revisions to Arizona Revised Statutes section 16-127 effective on that date).[5]

35.     The "investigation" H.B. 2492 requires into the citizenship of those who seek to register using the federally approved form is also prescribed for those who registered before the law's enactment without submitting documentary proof of citizenship, either because they used the federal form and are "federal only" voters or, presumably, because they registered before 2004.

36.     H.B. 2492 directs the Secretary of State and each county recorder to provide the Attorney General with a list of all individuals registered to vote who have not submitted documentary proof of citizenship and directs the Attorney General to "verify" their citizenship status by checking "any … state, city, town, county, or federal database" and "any other database relating to voter registration to which" the relevant official "has access." H.B. 2492 §4.  Many such databases, however, contain unreliable and outdated data.  For

---

[5] While §5 of H.B. 2492 amends a section of Arizona law that includes "Federal only voters" in its title, the amended provision affects more than just those voters.  It also applies to voters who registered using the Arizona form prior to 2004 and did not provide citizenship information.

instance, the law mandates that officials look to databases maintained by the Arizona Motor Vehicles Division, the Social Security Administration, and the National Association for Public Health Statistics and Information Systems (a non-governmental organization).  None of these databases was designed to capture or reflect current citizenship status.  Indeed, once issued, an Arizona driver's license can remain in effect until a person turns 65, meaning that the database's citizenship information could be *decades* out of date for certain drivers.  Some estimates suggest that as many as 192,000 Arizonans' most recent license was issued before the state started requiring proof of lawful presence to obtain a license.[6]  These significant time lags are enormously consequential in terms of the accuracy of the database's citizenship information given that between 12,000 and 15,000 Arizonans become naturalized citizens every year.

37.    Other databases H.B. 2492 directs election officials to consult are similarly unreliable.   For example, the Census Bureau has determined that Social Security Administration records are missing more than 10% of the population, *see Department of Commerce v. New York*, 139 S.Ct. 2551, 2563 (2019), and citizenship information can be incomplete even for those persons included in the database, as the purpose of the database is unrelated to the citizenship status of those listed in it.[7]

38.    The regime H.B. 2492 creates will thus be incapable of reliably determining registrants' and applicants' citizenship status, and hence will result in discrimination against naturalized U.S. citizens as well as the improper disenfranchisement of eligible voters. H.B. 2492's mandate that election officials report voters or registrants to law enforcement for investigation will likewise deter eligible voters from registering and perhaps voting.  Indeed, in addition to the reporting requirement already described, H.B. 2492 mandates—for federal only voters registered before October 31, 2022, that "the Secretary of State and each County

---

[6] https://www.npr.org/2022/03/30/1089809421/arizona-republicans-enact-a-controversial-new-proof-of-citizenship-voting-law.

[7] https://www2.census.gov/cac/sac/meetings/2019-09/update-disclosure-avoidance-administrative-data.pdf?#, at 15.

Recorder" "make available to the Attorney General a list of all individuals who are registered to vote and who have not provided satisfactory evidence of citizenship" along with those individuals' applications.  H.B. 2492, §7.  It further requires the attorney general to (1) "prosecute individuals who are found [using the same unreliable databases] not to be United States citizens"; and (2) "submit a report to the Secretary of State, the President of the Senate, and the Speaker of the House of Representative on or before March 31, 2023 detailing all findings relating to the citizenship status of individuals who are registered to vote and who have not provided satisfactory evidence of citizenship." *Id.*  This will further chill eligible voters' exercise of their right to vote.

39.   H.B. 2492 also mandates cancellation of any person's registration if the relevant county recorder "receives and confirms information that the person registered is not a United States citizen." H.B. 2492, §8.  Yet H.B. 2492 provides no cutoff date by which the canceling of a voter's registration may occur under the revised Arizona law. Accordingly, there is nothing preventing the county recorder or other election official from removing a voter from the rolls, or otherwise blocking them from voting by mail or in presidential elections, weeks or even days before an election, when it is too late for the affected voters to correct any error.

40.   H.B. 2492's requirement to provide documentary proof of citizenship and the burdens imposed on federal only voters or those who cannot provide such proof disproportionately affect not only Arizona voters who are naturalized citizens (as explained), but also those who are racial minorities, elderly, or recently turned 18 years old, because the law singles out for disparate treatment "federal only" voters, who disproportionately have these characteristics.

41.   Finally, section 4 of H.B. 2492 requires election officials to reject any Arizonan's voter-registration form if the voter fails to include his or her place of birth.  H.B. 2492 §4 (amending Ariz. Rev. Stat. §16-121.01(A)).  It does so even though birthplace is not a prerequisite for U.S. citizenship and is not otherwise relevant to any qualification to vote under Arizona law, *see* Ariz. Const. art. VII, §2, cl. A; Ariz. Rev. Stat. §16-101.  This

unnecessary requirement will burden voters and make it more likely that qualified applicants—whether due to inadvertent omission, misunderstanding, or other reason—fail to complete this part of the form and are excluded from the voter rolls.

*Plaintiffs Timely Provided Defendants With Notice Of The NVRA Violations*

42.    On April 29, 2022, the DNC and ADP sent notice, pursuant to 52 U.S.C. §20510(b), to Secretary of State Hobbs and Attorney General Brnovich informing them that Arizona law as amended by H.B. 2492 violates the NVRA in all the ways identified in this complaint as well as the First and Fourteenth Amendments.  A copy of that notice is attached as Exhibit A.  Because none of those violations was remedied in the subsequent 90 days, this suit is proper.  *Id.*

**CLAIMS FOR RELIEF**

**Count I:  Violation of the First and Fourteenth Amendment to the United States Constitution – Undue Burden on the Fundamental Right to Vote**

43.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

44.    State laws that burden the right to vote violate the First and Fourteenth Amendments unless relevant and legitimate state interests of sufficient weight justify the burdens.  *See Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  The more severely a law burdens the right to vote the more strictly it must be scrutinized, but even slight burdens must be justified by valid state interests.  Where a law's burden on the right to vote is "severe," the law "is subject to strict scrutiny."  *Soltysik v. Padilla*, 910 F.3d 438, 444 (9th Cir. 2018); *see also Burdick*, 504 U.S. at 434.

45.    H.B. 2492 imposes multiple severe burdens on Arizona citizens' ability to vote with no corresponding justification.

46.    First, section 4 of H.B. 2492 imposes a significant burden on the right to vote by requiring that Arizonans seeking to register either provide documentary proof of citizenship or otherwise happen to satisfy election officials that they are a citizen.  For many individuals, particularly lower-income ones, that burden is likely to be insurmountable.  That is because the cost to obtain or replace U.S. citizenship documents can be substantial:  Fees

to obtain a birth certificate can run as high as $30, a passport card can cost $55 (plus the cost of photos), and a replacement naturalization certificate costs $555.  As a result, the burden may prevent eligible people from registering and voting—the most severe form of burden on the right to vote.  And a requirement to produce documentary proof of citizenship is not justified by any governmental interest; as noted at the outset, Arizona has cited nothing indicating that requiring such proof avoids registration and voting by ineligible individuals.

47.     Sections 5, 7, and 8 of H.B. 2492 also severely burden the right to vote by directing election officials to assess whether individuals are citizens and mandating that the results of that investigation lead to prosecution, removal from the voter rolls, and/or exclusion from the ability to vote by mail and vote in presidential elections.

48.     Limitations on the ability to vote by mail, which has been used broadly by a majority of Arizona voters for decades, limits voters' access to the ballot.

49.     Removal from the rolls and barring voters from participating in presidential elections, meanwhile, entirely disenfranchises those voters (either as to presidential elections or all elections)—the most severe form of burden on the right to vote.  The law's exclusion of voters from participating in presidential elections (or any federal elections via mail ballot) is particularly burdensome and egregious because many of the voters in question, by registering using the federal form, necessarily complied with all registration requirements under federal law.

50.     Moreover, just the threat of these consequences means voters must repeatedly check the voter rolls to see if their registration has been canceled (so that they can correct any errors).  And they must simply hope that a cancellation—or a bar on participating in a presidential election or using vote by mail—does not occur within 29 days before an election, the deadline under state law to register, *see* Ariz. Rev. Stat. §16-120(A).

51.     The threat of investigation and prosecution likewise unduly burdens the right to vote.  Voters must now subject themselves to an increased risk of such action simply by registering and voting.  The chill on exercise of the franchise that is likely to result from such a system is itself an unnecessary hurdle would-be voters must overcome.

52.    There is no valid justification for these various burdens H.B. 2492 imposes, much less one sufficient to overcome strict scrutiny.  The law's requirement that Arizonans submit documentary proof of citizenship—and the concomitant enforcement mechanisms (i.e., prosecution and removal from the voter rolls)—are unnecessary to manage the state's voter rolls, which were already designed to ensure only eligible voters could vote and were monitored extensively by government officials through less error-prone procedures.  *See, e.g.*, Ariz. Stat. 16.168, 16-121.01, 16-165.  The Arizona legislature did not identify any evidence that the existing structure was not adequately serving that aim.  And no other compelling governmental interest justifies the burdens the law imposes on voters.

**Count II:  Violation of the Fourteenth Amendment to the United States Constitution – Procedural Due Process**

53.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

54.    The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, §1.  "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.'"  *Raetzel v. Parks/Bellemont Absentee Election Board*, 762 F.Supp. 1354, 1356 (D. Ariz. 1990) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972)).  A state thus may not deny a constitutionally protected liberty interest without adequate procedural protections.

55.    To assess the adequacy of such protections, a court examines three factors:

- the private interest affected by the official action;

- the risk of an erroneous deprivation of the interest, and the probable value of additional procedural safeguards; and

- the government's interest, including the fiscal and administrative burdens that additional procedural requirements would impose.

*Mathews v. Eldridge*, 424 U.S. 319, 334-335 (1976), *cited in, e.g.*, *Brittain v. Hansen*, 451 F.3d 982, 1000 (9th Cir. 2006).[8]

56.   H.B. 2492 violates procedural due process by imposing requirements and restrictions related to registration and voting without protections sufficient to ensure that eligible citizens are not barred from registering and voting.  Among other problems, the regime the statute creates does not afford affected individuals an opportunity to participate, and it uses sources of citizenship information that are likely to be incomplete and/or inaccurate.

57.   More specifically, H.B. 2492 allows for voters' registration attempts to be rejected, §4; for their access to vote-by-mail and the presidential ballot to be blocked, §5; and for their names to be removed entirely from the rolls, §8—often with no notice or opportunity to be heard, much less to be heard with sufficient time to correct inaccurate citizenship determination or re-register before the next election.

58.   Application of the three *Mathews* factors confirms that these provisions each violate procedural due process.

59.   First, the private interest affected by each provision is extremely strong.  Voting is a "fundamental political right, preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).  It is also—as precedent in this district explains—"a 'liberty' interest which may not be confiscated without due process." *Raetzel*, 762 F.Supp. at 1356.  It "is therefore entitled to substantial weight." *Arizona Democratic Party*, 485 F.Supp.3d at 1094.

60.   Second, the provisions create a high risk of wrongly (1) barring voters from registering, voting by mail, or participating in presidential elections, and (2) removing voters from the rolls. *See* Matt Vasilogambros, *The Messy Politics of Voter Purges*, PEW, October

---

[8] "Multiple district courts, both within and outside the Ninth Circuit, have considered procedural due process challenges to election regulations under ordinary procedural due process principles," i.e., the principles delineated in *Mathews*. *Arizona Democratic Party v. Hobbs*, 485 F.Supp.3d 1073, 1093 (D. Ariz. 2020).  But even if procedural-due-process claims were instead assessed under the *Anderson/Burdick* framework, H.B. 2492 would be unconstitutional. *See infra* ¶¶TK-TK.

25, 2019, https://www.pewtrusts.org/en/research-and-analysis/blogs/stateline/2019/10/25/the-messy-politics-of-voter-purges (describing the voter cancellation process as "a system that is ripe for errors"); Jonathan Brater et. al, *Purges: A Growing Threat to the Right to Vote*, Brennan Center for Justice, July 20, 2018, https://www.brennancenter.org/our-work/research-reports/purges-growing-threat-right-vote (noting that purges rely on inaccurate data and are "often-flawed."). Giving voters notice and an opportunity to be heard within sufficient time to remedy any incorrect citizenship determination would greatly reduce this risk.

61. Third, while the government has an interest in preventing ineligible people from voting, providing notice and an opportunity to be heard prior to (1) rejecting a person's registration, (2) denying a person the right to vote by mail, (3) preventing a person from voting in a presidential election, or (4) removing a person from the voter rolls would not undermine that interest, i.e., would not allow voting by those who are truly ineligible. Nor would doing so be burdensome; indeed, the state has long operated under a notice regime, and continues to do so with respect to other removal programs.

62. In short, application of the *Mathews* factors confirms what common sense suggests: Due process is "not provided when … election procedures do not give some form of post-deprivation notice to the affected individual so that any defect in eligibility can be cured and the individual is not continually and repeatedly denied so fundamental a right." *Raetzel*, 762 F.Supp. at 1358. H.B. 2492 is therefore unconstitutional.

**Count III: Violation of the Fourteenth Amendment to the United States Constitution – Equal Protection**

63. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

64. The Equal Protection Clause of the Fourteenth Amendment prohibits each state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. This means "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburn Living Center*, 473 U.S. 432, 439 (1985). Equal protection applies to "the manner of [the] exercise" of voting," such that once a state has

"granted the right to vote on equal terms," the state "may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104-105 (2000) (per curiam).

65.     H.B. 2492 disproportionately impacts Arizona voters who are racial minorities, naturalized citizens, elderly, or recently turned 18 years old, by singling out for disparate treatment "federal only" voters who disproportionately have these characteristics.  The law also targets older voters, who are more likely than younger voters to have registered before 2004 (when, as noted, documentary proof of citizenship was first required) and not updated their driver's license since 1996.

66.     Laws that impose burdens based on race or type of citizenship are subject to heightened scrutiny.  *See Miller v. Johnson*, 515 U.S. 900, 904 (1995) ("Racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination."); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977) ("The impact of the official action [that] 'bears more heavily on one race than another," can be evidence of actionable discrimination); *Olagues v. Russoniello*, 770 F.2d 791, 801 (9th Cir. 1985) (national-origin classification triggers strict scrutiny); *Graham v. Richardson*, 403 U.S. 365, 371-372 (1971) ("[T]he Court's decisions have established that classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to close judicial scrutiny.").

67.     No legitimate state interest justifies H.B. 2492's disparate treatment of Arizona voters based on demographic characteristics.

68.     Absent relief, the DNC and ADP, along with their members and constituents, will be denied an equal opportunity as other eligible voters to participate in Arizona's elections.

**Count IV: Violation of Section 6 of the NVRA, 52 U.S.C. §20505(a)(1) – Acceptance Of The Federal Form And Registration Of Federal Form Applicants**

69.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

70.     Section 6 of the NVRA requires Arizona "to accept and use" the federal form (i.e., "the mail voter registration application form prescribed by the Federal Election Commission pursuant to [52 U.S.C.] 20508(a)(2)"), and to register for all "elections for Federal office" any qualified elector who completes and timely submits that form  52 U.S.C. §20505(a)(1); *see also id.* §20507(a)(1)(A)-(D).  That requirement encompasses registering such applicants to vote in presidential elections and allowing them to so vote.

71.     The federal form does not require voters to submit proof of citizenship and therefore precludes Arizona from requiring such proof as a prerequisite for voting in elections for federal office, including presidential elections.

72.     H.B. 2492 violates section 6 of the NVRA because it requires applicants for registration who use the federal form to provide documentary proof of citizenship, and because it directs state and county officials to exclude such voters from the rolls of persons eligible to vote in presidential elections.

**Count V: Violation of Section 8 of the NVRA, 52 U.S.C. §20507(b)(1)**

**– Uniformity and Non-discrimination**

73.     Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

74.     Section 8 of the NVRA provides that "[a]ny State program to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office …   shall be uniform [and] nondiscriminatory."  52 U.S.C. §20507(b)(1).  H.B. 2492 is both discriminatory and non-uniform.

75.     H.B. 2492 discriminates against federal only voters in several ways.  Section 5 makes only those voters ineligible to receive an early ballot, and it excludes them from voting in presidential elections.  Section 7 singles out those voters for investigation and refers them for potential prosecution by the Attorney General.  And, applied in concert with section 7, section 8 singles them out for removal from voter rolls.

76.     The state appears to extend this discrimination to voters that registered using the Arizona form before 2004 without providing documentary proof of citizenship.  By

excluding voters who have not provided such documentation from voting in presidential elections, and by directing that their citizenship status be investigated by the Attorney General, the law treats those voters differently from voters who registered in the state after 2004.  Even more confusing, the law does not appear to exclude these voters from voting by mail.  Failing to treat all voters who have not provided documentary proof of citizenship alike is yet another way in which the law discriminates.

77.    For essentially the same reasons, Arizona law, as amended by H.B. 2492, is non-uniform.  H.B. 2492 prescribes one set of rules for voters eligible to vote in both federal and Arizona elections.  These voters are not systematically made ineligible to vote early by mail or singled out for investigation and prosecution by the Arizona Attorney General.

78.    The other set of rules—those enacted by H.B. 2492—apply solely to "federal only" voters and, in some instances, those who registered without providing documentary proof of citizenship.   H.B. 2492 makes federal only voters who have not provided documentary proof of citizenship and voters who registered without such proof before 2004 ineligible to vote in presidential elections (section 5), and singles out those voters for investigation, potential prosecution by the Arizona Attorney General (section 7), and removal from the voter rolls, (section 8).  It also excludes federal only voters, and only those voters, from voting by mail (section 5).

**Count VI: Violation of the NVRA, 52 U.S.C. §20504(c)(2)(B)(i)-(ii) – Minimum-Information-Necessary Requirement**

79.    Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

80.    The NVRA mandates that states "require only [the] minimum amount of information necessary to … enable State election officials to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."  52 U.S.C. §20504(c)(2)(B)(i)-(ii).

81.    That provision also makes clear what constitutes the "minimum amount of information necessary" for such purposes with respect to citizenship, by providing that the NVRA registration form "shall include a statement that (i) states each eligibility requirement

(including citizenship); (ii) contains an attestation that the applicant meets each such requirement; and (iii) requires the signature of the applicant, under penalty of perjury." 52 U.S.C. §20504(c)(2)(C)(i)-(iii).

82. H.B. 2492's demand for documentary proof of citizenship goes beyond the federal "minimum … necessary" to establish citizenship, 52 U.S.C. §20504(c)(2)(B)(i)-(ii). In particular, H.B. 2492 requires documentary proof of citizenship in place of the attestation under penalty of perjury that the NVRA requires.

83. Accordingly, H.B. 2492 violates the "minimum information" requirement of the NVRA with respect to federal only voters who register using the NVRA registration form—which, as noted, the NVRA requires states to "accept and use," 52 U.S.C. §20505.

**Count VII: Violation of Section 8 of the NVRA, 52 U.S.C. §20507(c)(2)(A) –**
**Removing Voters from the Rolls Shortly Before an Election**

84. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

85. Section 8 of the NVRA prohibits states from operating "any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters" at any point within "90 days" of the "date of a primary or general election for Federal office." 52 U.S.C. §20507(c)(2)(A).

86. H.B. 2492 (specifically section 8) does not comply with this provision. The law provisions regarding removing voters from the rolls plainly has "the purpose of remov[ing] the names of ineligible voters from the official lists of eligible voters," *id.* Yet the statute places no time limit on county recorders' or other election officials' identification of voters for removal from the rolls with respect to the temporal proximity of a federal election. H.B. 2492, §8. Likewise, section 5's process for barring a voter from voting in presidential elections functions as a removal from the voter rolls (for those elections) and should be subject to the same procedural requirements. H.B. 2492, §5.

**Count VIII: Violation Of Section 101 Of The Civil Rights Act, 52 U.S.C.**
**§10101(a)(2)(B) – Materiality Provision**

87. Plaintiffs reallege all preceding paragraphs as if fully set forth herein.

88.     The materiality provision of section 101 of the 1964 Civil Rights Act prohibits state officials from rejecting applications to register to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. §10101(a)(2)(B).

89.     Section 4 of H.B. 2492 violates the materiality provision by requiring state election officials to reject entirely registration applications using the Arizona form if documentary proof of citizenship is not provided.  It likewise violates the materiality provision by requiring state election officials to prohibit voters who register with the federal form and do not provide documentary proof of citizenship from voting in presidential elections.  The submission of documentary proof of citizenship is not a requirement to vote under Arizona law, *see* Ariz. Const. art. VII §2, cl. A; Ariz. Rev. Stat. §16-101, and— particularly where the applicant has already attested to his or her citizenship status, as the federal form requires—is not material to determining whether the applicant is qualified to vote under Arizona law.

90.     Section 4 of H.B. 2492 also violates the materiality provision by barring state election officials from accepting a person's application to register to vote if that application does not include the person's birthplace.  Because eligibility to vote under Arizona law does not depend on birthplace, *see* Ariz. Const. art. VII §2, cl. A; Ariz. Rev. Stat. §16-101, whether a person supplies his or her place of birth on an application is not material to whether the applicant meets Arizona's voter qualification requirements.

## REQUEST FOR JURY TRIAL

Plaintiffs request a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for entry of a judgment:

a.     Declaring Arizona law, as amended by H.B. 2492, to violate the NVRA, the First Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment;

b.      Preliminarily and permanently enjoining defendants from: (1) rejecting any voter-registration application submitted using the federal form on the ground that it was not accompanied by documentary proof of citizenship, (2) barring any registered voter from voting by mail except on grounds that apply equally to all Arizona voters, (3) barring any registered voter from voting in presidential elections, and (4) subjecting any registered voter to investigation or prosecution based on the procedures established by H.B. 2492;

c.      Ordering defendants to pay plaintiffs' reasonable attorney's fees, including litigation expenses and costs, as allowed under 52 U.S.C. §20510(c); and

d.      Awarding plaintiffs such other and further relief as the Court deems just and proper.

DATED this 15th day of August, 2022.

PAPETTI SAMUELS WEISS MCKIRGAN LLP

/s/Bruce Samuels
Bruce Samuels
Jennifer Lee-Cota

WILMER CUTLER PICKERING HALE AND DORR LLP

Seth P. Waxman (*pro hac vice application forthcoming*)
Daniel Volchok (*pro hac vice application forthcoming*)
Christopher E. Babbitt (*pro hac vice application forthcoming*)
Edward Williams (*pro hac vice application forthcoming*)
Susan Pelletier (*pro hac vice application forthcoming*)

*Attorneys for Plaintiff*